UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BANK OF ANN ARBOR,

        Plaintiff

v.

EVEREST NATIONAL INSURANCE COMPANY,

        Defendant.

Case No. 12-11251
Honorable Julian Abele Cook, Jr.

## ORDER

The underlying issue in this case involves a dispute between the Plaintiff, Bank of Ann Arbor, and the Defendant, Everest National Insurance Company ("Everest"), over an existing contract of indemnification. Currently pending before the Court is Everest's motion for reconsideration of an order in which the Bank's motion for summary judgment was granted. (ECF 30).

The Local Rules of the Eastern District of Michigan require a party, who seeks to obtain the reconsideration of an order, to (1) establish the existence of "a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled;" and (2) "show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). However, "the court will not grant motions for . . . reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." *Id.* Similarly, a court may grant a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e)

Page 1

only if there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). The Sixth Circuit has determined that the "palpable defect" standard for reconsideration under this Local Rule is consistent with the grounds for amending or altering a judgment under Federal Rule of Civil Procedure 59(e). *Henderson v. Walled Lake Consol. Sch.*, 463 F.3d 479  496 (6th Cir. 2006).

The material facts of this case, which were generally outlined in the now-challenged order, are undisputed. On December 22, 2010, the Bank purchased a Financial Institution Bond ("FIB") from Everest. The FIB contains indemnification coverage for specific risks typically borne by banks such as losses from robbery or forgery. The FIB was effective from January 1, 2011 through January 1, 2012. On October 4, 2011, the Bank received a wire transfer request via a facsimile from an individual purporting to be its customer, John Doe.[1] The request was for $196,000. The wire transfer requested that funds from his home equity line of credit be wired to a bank in South Korea. The request contained the customer's name and handwritten signature, email address, home address, telephone number, and all of the necessary account information.

In order to prevent fraud, the Bank's established practice is to compare the signature on a request to the signature maintained in its file and to confirm the request by telephoning the customer. The Bank followed these procedures upon receiving John Doe's request. It confirmed that the signature on the faxed request was the same as the signature in his file. Then, the Bank called the

---

[1] In the interests of privacy and pursuant to the Protective Order - the terms of which have been agreed by the parties - the customer's identifying information has not been included herein and will not be identified in this public filing. Thus, the customer will be referenced only as "John Doe."

telephone number in John Doe's file and verified the request with an individual who identified himself as John Doe. After completing the verification procedure, the Bank, in good faith and in reliance on the instructions and signature on the wire transfer request, transferred $196,000 to Korea Exchange Bank in Seoul, South Korea.

Two days later, the Bank received a second faxed wire transfer request from John Doe. The request was for $98,000 and again asked that the funds be transferred from his home equity line of credit account to the same bank in South Korea. This second wire transfer request was received by a Bank employee who coincidentally happened to know John Doe personally and questioned why he would want to wire money to South Korea. A review of his file revealed that on September 30, 2011, the Bank had received an email from an individual identifying himself as John Doe inquiring how to change his telephone number on record with the Bank. The Bank had informed the sender that such requests must be in writing. Later that same day, the Bank received another email purportedly from John Doe with an attached formal, written request to have his telephone number changed, which was signed by him. After comparing the signature on the letter request to the signature in John Doe's file, the Bank changed his telephone number in its files.

Upon discovering that his contact information had been changed, the Bank immediately contacted John Doe at the different, older number and learned that he had not made either wire transfer request. Accordingly, the second request was not honored and the Bank contacted local law enforcement to assist in the investigation. The Bank repaid the $196,000 to John Doe's account.

On October 4, 2011, after completing its investigation, the Bank notified Everest of the above facts and requested coverage for the $196,000 wire transfer. The Banks' request to Everest was timely and satisfied the requirements for the submission of a claim under the terms of the FIB. On

January 23, 2012, Everest denied coverage to the Bank under two grounds. First, Everest asserted that a rider to the FIB precluded coverage. Second, Everest asserted that the loss was excluded under Exclusion (e) as a loan loss. Bank of Ann Arbor filed this lawsuit on March 20, 2012, to recover its $196,000 loss under the FIB.

In the order which is now under scrutiny, the Court concluded that the Bank's loss was (1) the result of a forgery, and (2) covered by the plain language of the FIB. The Court also determined that the Bank was entitled to reimbursement for the loss under the FIB. As a consequence, the Court (1) granted the Bank's motion for summary judgment, and (2) denied Everest's motion for summary judgment.

In its motion for reconsideration, Everest argues that the entry of a summary judgment was inappropriate because the Bank never proved that the forged withdrawal order was an original document. Everest points out that, inasmuch as the Bank received the fraudulent wire transfer request only through a facsimile process, it is not an "original" document as required by the FIB. In making this argument, Everest has presented this issue to the Court for the first time in its motion for reconsideration. More specifically, there is no reference to this issue in Everest's answer to the Bank's complaint, affirmative defenses, or motion for summary judgment.

It is well-settled that a Rule 59(e) motion is not a vehicle for raising arguments before the Court arguments that had not been advanced earlier. "Rule 59(e) motions are aimed at reconsideration, not initial consideration. Thus, parties [cannot] use them to raise arguments which could, and should, have been made before judgment issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Since this argument has not been previously raised, it cannot be raised now. Therefore, Everest's motion for reconsideration must be denied.

(ECF 30).

    IT IS SO ORDERED.

Date: May 8, 2013            s/Julian Abele Cook, Jr.
           JULIAN ABELE COOK, JR.
           U.S. District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on May 8, 2013.

           s/ Kay Doaks
           Case Manager